# Exhibit C

# THE LAW FIRM OF
# **PETER STROJNIK**

---

November 7, 2008

**SETTLEMENT DISCUSSION SUBJECT
TO FED. R. EVID. 408 OR EQUIVALENT**

Steven Augustino, Esq.
Kelley Drye LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007-5108
*Via email only: saugustino@kelleydrye.com*

Re:   Digitalspeed Communications, Inc; Adam H. Pasternack

Dear Mr. Augustino:

Thank you for your several emails over the past month. It was also a pleasure speaking with you on November 5, 2008. I am hopeful that you will not have to filter through the box of five lawsuits you mentioned you received from your clients.

I have reviewed your offer with all of my clients who are Plaintiffs in the subject matters against Mr. Pasternack and Digitalspeed Communications, Inc. The exhaustive list of Complaints are listed as follows:

1) <u>Consumer Protection Corporation v. Medefile International, Inc. et al.</u>, Maricopa County Superior Court Cause No. CV2008-021122;
2) <u>Consumer Protection Corporation v. Radisson Hotels International et al.</u>, Maricopa County Superior Court Cause No. CV2008-018530;
3) <u>Consumer Protection Corporation v. Playbox (US), Inc. et al.</u>, Maricopa County Superior Court Cause No. CV2008-021981;
4) <u>Peter Strojnik, P.C. v. Hybrid Technologies, Inc. et al.</u>; United States District Court Cause No. 2:08-cv-1017 PHX ROS;
5) <u>Peter Strojnik, P.C. v. Signalife, Inc. et al.</u>, United States District Court Cause No. 2:08-cv-1116 PHX FJM.

While my clients appreciate your spirit of compromise, the number set forth by your clients ranging from $7,000.00 to $10,000.00 leads us to believe your side does not appreciate the gravity of the current allegations and potential ruinous effect it could have

on Mr. Pasternack. With that being said, we respectfully decline to accept your clients' offer.

During our conversation last week and within our exchanged emails during the past month, you insisted that Digitalspeed Communications, Inc. is simply a legitimate telecom carrier located in Philadelphia. You and I discussed the content of Digitalspeed's website. Notwithstanding the fact Digitalspeed has been in existence since April 3, 2003 and is an alleged legitimate telecom carrier, all of the pages on the website, except for the page "Contact Us" is under construction as follows:



It should also be noted that Digitalspeed, an alleged legitimate telecom carrier, was extremely defiant in our several attempts to serve it and Mr. Pasternack. Attempts were made via mail at the Chestnut Street address in Philadelphia, but they were "refused." You claim Digitalspeed has not been there for quite some time, but Digitalspeed signed for a subpoena in August in the Signalife case. Attempts were made via mail at the Market Street address, but they were "refused." Attempts were made via mail at Mr. Pasternack's home on Spring Mill Road in Villanova, but they were "refused." Finally, my office enlisted the services of the Montgomery County Sheriff's Department. Ultimately, on November 3, 2008, Corporal Thompson personally served your clients.

Peter Strojnik                                    Page 3                                    11/7/2008

I would assume that if Digitalspeed and Mr. Pasternack have nothing to hide, they would not only accept mail service, as they initially did for a subpoena in the Signalife matter, and accept correspondence from my office, but they would do all that is in their power to legally provide the exonerating documentation and information to us. I understand such statements are not salient to the substantive allegations, but it is salient to confirm and corroborate what we already know – Mr. Pasternack and Digitalspeed are not legitimate and do in fact mass broadcast facsimiles in violation of the TCPA.

While I understand you are merely attempting to protect your clients' interests with baseless assertions that Digitalspeed is a legitimate telecom carrier, I have difficulty believing such a declaration due to the following enumerated objective evidence, which should be read together and not in isolation so that the full grasp of liability is reflected:

### 1. Digitalspeed Issued Telephone Numbers on the Faxes

Our research and investigation has revealed that Digitalspeed has been issued the removal telephone numbers listed on the illegally broadcasted facsimiles. You argue that indeed Digitalspeed does own these numbers, but that it permits an unidentified "end user" to use these numbers for the services they provide. In fact, you indicated that you are willing to disclose the names of these "end users" to us in partial consideration of dismissing your clients.

Our research indicates that in fact it is not "end users" that are using the removal numbers issued to Digitalspeed for illegal purposes, but it is in fact Digitalspeed. However, while that matter will be discussed infra., and assuming that is not true, which it is, the mere fact that Digitalspeed permits its telephone numbers to be listed on illegally broadcasted facsimiles makes them aiders and abettors (see Addendum A).

### 2. The Digitalspeed Removal Number Recordings State "Our List"

A simple telephone call to one of the facsimile removal numbers will reveal that the recording the caller hears is the following: "To be removed from our list, please enter your three digit area code and seven digit fax number. Please do not enter a 1 before the area code." Once I have transferred the recording from my Digital Voice Recorder to a CD, I will forward you a copy along with the others. You can hear this recording if you call the following removal number on the fax promoting Signalife, Inc.:

---

Information herein may be forward looking within the meaning of Section 27A of the Securities Act of 1933 and Section 21B of the SEC Act of 1934. Statements involving discussions of future events. Don't rely on them to make a decision. Past performance isn't indicative of future results. SGN is a reporting company. SGN may be delisted from Amex. SGN has: an accumulated deficit, negative operating cash flow, related party transactions, no revenues in its recent quarter and the stock float is increasing. It isn't a revenue producing company. We received 200,000 free trading shares from a non-affiliate. We intend to sell all 200,000 shares now, which could cause the stock to go down, resulting in losses for you. We paid $33750 to send this report. SGN is a high risk stock. WARNING: You can lose money Buying SGN. This report shall not be taken as investment advice or solicitation. URGENT: Please read SGN's SEC filings before you invest.

If you received this fax in error, and would like to be removed permanently from our established contact database, Please call **1-877-283-0449**.

---

3030 NORTH CENTRAL AVENUE – SUITE 1401 – PHOENIX – ARIZONA – 85021

TEL: 602.297.3019 – FAX: 602.264.1441 - EMAIL: PKSESQ@AOL.COM

You will notice the recording states "To be removed from *our* list..." Considering the number has been issued to Digitalspeed, we consider this to be additional favorable evidence supporting the fact that Digitalspeed is mass broadcasting these facsimiles. Indeed, it can reasonably be assumed that the Digitalspeed list from which the caller will be removed is Digitalspeed's fax number list.

Again, you may argue that is the "end user" who has manufactured this recording and using this number on illegally broadcasted facsimiles. While we strongly believe, and in fact know, such an argument is untrue, the same and valid counter-argument as stated above negates such an argument, e.g. aiding and abetting and conspiracy.

### 3. Adam Pasternack Was The President and CEO of the Now Defunct Faxquest International

Faxquest International was a notorious offender of 47 U.S.C. § 227 et seq. In actuality, Faxquest was merely a spin-off of the Chris Stefano-run General Fax, Inc. – another notorious offender of the TCPA. In fact, Mr. Stefano was involved in Faxquest International. Mr. Pasternack was the President and CEO of Faxquest International.

Faxquest did not hide its identity too well. A simple google of the name will reveal several pieces of substantive and favorable pieces of evidence. For example, Citysearch.com lists Faxquest as a fax service. Yellowbot.com lists Faxquest as a communication fax service. Yahoo Local Yellow Pages lists Faxquest as a fax service. Mojopages.com lists Faxquest as a fax transmission service. It should be noted that on Yahoo, Faxquest's name is listed directly adjacent to www.protus.com - the notorious fax blasting company with its principal place of business in Canada.

A Lexis.com search of Faxquest also reveals that it has two offices as follows:

>    2400 Market Street, Suite 423
>    Philadelphia, Pennsylvania 19103
>
>    1811 Chestnut Street
>    Philadelphia, Pennsylvania 19103

While we would like to believe your assertions that Digitalspeed is a legitimate telecom carrier desirous of assisting Consumer Protection Corporation and Peter Strojnik, P.C. in prosecuting the principal offenders here, we believe the evidence in its totality provides a vivid picture confirming that we have already sued the correct Defendants.

My clients are contemplating adding Faxquest International as a principal defendant, and as the alter ego of Mr. Pasternack, in each of the five cases. Due to the fact that Mr. Pasternack has retained you as his counsel, I am hopeful you will extend us the courtesy of accepting service on Faxquest's behalf once the drafts are finalized. I am sure Mr. Pasternack does not want Corporal Thompson to visit his home again.

As I told you on the telephone last week, I represent clients who have a sincere desire to protect the consumers who do not or cannot protect themselves. One means of providing those consumers with the ability to protect themselves is of course filing a class action lawsuit on behalf of such a defined class. However, another alternative and additional means is to provide the consumers with the information they need to pursue their own cause of action. In light of this, I ask you and your clients to comment on the attached press release for publication. Of course, I will retain editorial discretion when deciding whether to incorporate your comments.

On to your invitation to settle. In light of the above and additional evidence, my clients are not inclined to accept your offer of compromise. We believe the mere listing of your client's telephone number on the fax is sufficient to confer personal jurisdiction.

This is a strong case likely to reverberate throughout the junk fax industry, and particularly through Washington, D.C. where the FCC is making tireless efforts, as my clients are, to stamp out the illegal junk fax industry. My clients are torn between the deterrent effect on the entire industry – which would be affected in the absence of settlement – and the deterrent effect to the defendants in this lawsuit in the event a settlement is reached. My clients recognize the utility of settlement, and, on that basis, offer the following analysis:

**Conditions of Settlement with the Class:** The claims of each of the classes are between $100 million and $1.5 billion based on the facts as we know them today. A class settlement would require the approval of the Court. The settlement would include the following elements:

1) A settlement amount to be deposited in a sequestered account for payment to the members of the Class; and

2) A nationwide notice to the members through notice if a nationwide publication such as USA Today; and

3) A period of time for the claims to be submitted to the Court; and

4) A distribution of the settlement amount to the members of the class; and

5) A stipulation to the payment of costs and attorney's fees to my clients; and

6) A voluntary cease and desist order prohibiting your clients from knowingly distributing, directly or indirectly, faxes in violation of the TCPA; and

7) An agreement of cooperation against the remaining Defendants.

Even at the lower end of the spectrum, $100 million, a class settlement may be ruinous Mr. Pasternack and Digitalspeed. I suspect that your clients would prefer to spend their resources litigating rather than paying an amount that will take them out of business.

**Conditions of Settlement with My Clients:** Since the Class has not been certified yet, a settlement with my clients directly is also possible. In order to determine the settlement value with my clients directly, I take the liberty of assessing various exposures, risks and benefits:

| Item | Exposure[1] | Likelihood | Value |
|---|---|---|---|
| Attorney's Fees | $750,000 | 100% | $750,000 |
| Liability | $100,000,000 | 50% | $50,000,000 |
| Consent to Cease & Desist[2] | ($4,000,000) | 100% | ($4,000,000) |
| Cooperation | ($45,000,000) | 100% | ($45,000,000) |
| My Clients's saving of resources | ($750,000) | 100% | ($750,000) |
| My Clients's Motivation to Settle[3] | ($250,000) | 100% | ($250,000) |
| **MONETARY SETTLEMENT VALUE** | | | **$750,000.00** |

We understand that reasonable people may in good faith disagree with our assessment. But since my clients' primary objective is compliance, not money, any disagreement on the numbers has a negligible, if any, effect on my client's position. The importance of monetary terms is limited to my client's continued financial ability to prosecute TCPA offenders.

Before we entertain monetary settlement, we need to be assured that the non-monetary settlement terms are acceptable. We highly value Digitalspeed's and Mr. Pasternack's cooperation against third party "end users". However, what Digitalspeed is offering in terms of information can be obtained, of course not without a fight, through discovery.

We also assign a high value the voluntary Cease and Desist provision. Such provision directly attains my client's goal of reducing TCPA violations.

There is value in my client's pursuit of these five proposed class action lawsuits in their normal course. My clients understand the time and financing that this lawsuit will require. Yet, to the extent that my client's primary objectives – protection of consumers from unwanted faxes - can be achieved through settlement, my clients also recognize the utility of early resolution. In light of the above, my clients encourage Digitalspeed and Mr. Pasternack to set forth an offer of compromise that is more in line with the above analysis.

---

[1] All costs are estimates based on my experience.

[2] Client's primary intent is to prevent junk faxes in the future.

[3] Client is motivated to settle so that it may refocus its resources on other TCPA cases.

Obviously, we will in good faith consider any proposal by your clients. However, our openness to early resolution will decline in staggered steps as this litigation proceeds. I invite you and your clients to Phoenix to discuss in person.

Very Truly Yours,

Peter K. Strojnik, Esq.